1  Yaw-Jiun (Gene) Wu (# 228240)
     gwu@afrct.com
2  Jane K. Lee (# 247259)
     jlee@afrct.com
3  ANGLIN, FLEWELLING, RASMUSSEN,
     CAMPBELL & TRYTTEN LLP
4  199 South Los Robles Avenue, Suite 600
   Pasadena, California 91101-2459
5  Tel:  (626) 535-1900 | Fax:   (626) 577-7764
6
7  Attorneys for Defendant
   WELLS FARGO BANK, N.A.,
8  successor by merger with Wells Fargo
   Bank Southwest, N.A., f/k/a Wachovia
9  Mortgage, FSB, f/k/a World Savings
   Bank, FSB ("Wells Fargo")
10

11           UNITED STATES DISTRICT COURT

12     CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

13

14 FIDEL CASTILLO AND OLGA O.          CASE NO.: 2:13-cv-08931-ODW(SHx)
   CASTILLO,
15                                     **DEFENDANT WELLS FARGO'S
                                       NOTICE OF MOTION AND
16             Plaintiffs,             MOTION TO DISMISS
                                       PLAINTIFFS' FIRST AMENDED
17        v.                           COMPLAINT; MEMORANDUM
                                       OF POINTS AND AUTHORITIES**
18 WELLS FARGO BANK, N.A. and
   DOES 1-10, inclusive,              Date:    April 7, 2014
19                                    Time:    1:30 p.m.
              Defendants.             Ctrm:    11
20
21
22                                    [Assigned to the Hon. Otis D.
                                       Wright II]
23

24

25 **TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

26        **PLEASE TAKE NOTICE** that on April 7, 2014, at 1:30 p.m. in

27 Courtroom 11 of the above-entitled Court, located at 312 N. Spring Street, Los

28 Angeles, California, 90012 the Honorable Otis D. Wright presiding, defendant

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   Wells Fargo Bank, N.A., successor by merger with Wells Fargo Bank Southwest,

2   N.A., formerly known as Wachovia Mortgage, FSB, formerly known as World

3   Savings Bank, FSB ("Wells Fargo"), will move, pursuant to Rule 12(b)(6) of the

4   Federal Rules of Civil Procedure, for an order dismissing all of the claims for relief

5   in plaintiffs' first amended complaint ("FAC").  Grounds for the motion to dismiss

6   are that plaintiffs do not plead facts sufficient to state claims for relief, specifically:

7       1.  **First Claim for Relief – Fraudulent Concealment**

8       Plaintiffs' claim for relief for fraudulent concealment fails because:  (1) it is

9   time-barred; and (2) it is barred by the doctrine of res judicata.

10      2.  **Second Claim for Relief – Intentional Misrepresentation**

11      Plaintiffs' claim for relief for intentional misrepresentation fails because:

12  (1) it is time-barred; and (2) it is barred by the doctrine of res judicata.

13      3.  **Third Claim for Relief – Negligent Misrepresentation**

14      Plaintiffs' claim for relief for negligent misrepresentation fails because:

15  (1) it is time-barred; (2) Wells Fargo does not owe a duty of care as a matter of

16  law; and (3) it is barred by the doctrine of res judicata.

17      4.  **Fourth Claim for Relief – Breach of Contract**

18      Plaintiffs' claim for relief for breach of contract fails because:  (1) plaintiffs

19  fail to allege any breach of the contract; (2) it is barred by the doctrine of res

20  judicata; and (3) it is time-barred.

21      5.  **Fifth Claim for Relief – Breach of Implied Covenant of Good Faith**

22          **and Fair Dealing**

23      Plaintiffs' claim for relief for breach of implied covenant of good faith and

24  fair dealing fails because:  (1) it is time-barred; (2) it is barred by the doctrine of

25  res judicata; (3) plaintiffs have not alleged their own performance of the contract

26  and have not explained their failure to perform; and (4) the parties' written

27  agreements do not require Wells Fargo to modify the terms of plaintiffs' loan.

28  / / /

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

6. **Sixth Claim for Relief – Violations of CA B & P § 17200**

Plaintiffs fail to state a claim for relief for violation of the Business & Professions Code § 17200 ("UCL") because:  (1) plaintiffs lack standing because they have suffered no loss of money or property; (2) their predicate claims fail; (3) it is barred by res judicata; and (4) it is time-barred.

This motion is based on this notice, the memorandum of points and authorities, the request for judicial notice, the first amended complaint, and on Wells Fargo's argument at hearing.

**Compliance with Local Rule 7-3.**  Pursuant to L.R. 7-3, counsel for Wells Fargo attempted to meet and confer on January 28, 2014.  Plaintiffs' counsel has not responded.

Respectfully submitted,

Dated:  February 21, 2014

ANGLIN, FLEWELLING, RASMUSSEN, CAMPBELL & TRYTTEN LLP

By: _____ /s/ Jane K. Lee _____
    Jane K. Lee
Attorneys for Defendant
WELLS FARGO BANK, N.A., successor
by merger with Wells Fargo Bank
Southwest, N.A., f/k/a Wachovia Mortgage,
FSB, f/k/a World Savings Bank, FSB
("Wells Fargo")

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

1.   INTRODUCTION ........................................................................................1

2.   SUMMARY OF THE FIRST AMENDED COMPLAINT AND
     JUDICIALLY NOTICEABLE DOCUMENTS ...............................................1

3.   THE NEGATIVE AMORTIZATION CLAIMS HAVE
     ALREADY BEEN LITIGATED AND SETTLED .........................................2

4.   THE FIRST AND SECOND CLAIMS FOR FRAUD ARE
     TIME-BARRED ..........................................................................................4

5.   THE THIRD CLAIM IS TIME-BARRED AND THERE IS NO
     TORT DUTY OF CARE .............................................................................4

6.   PLAINTIFFS' TIME-BARRED FOURTH CLAIM FOR
     RELIEF FOR BREACH OF CONTRACT FAILS .......................................5

7.   PLAINTIFFS' FIFTH CLAIM FOR BREACH OF GOOD
     FAITH AND FAIR DEALING FAILS .........................................................8

8.   PLAINTIFFS' UCL CLAIM IS FATALLY DEFECTIVE.........................10

     A.   The UCL Claim is Time-Barred ........................................................10

     B.   Plaintiffs Lack Standing to Assert A UCL Claim..............................11

     C.   Plaintiffs Have Not Alleged Any UCL Violation...............................12

9.   CONCLUSION.........................................................................................14

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Cell Therapeutics, Inc. v. Lash Group*, Inc.,
   586 F. 3d 1204 (2010) ......................................................................................3

*DeLeon v. Wells Fargo Bank, N.A.*,
   2011 U.S. Dist. LEXIS 8296 (N.D. Cal. Jan. 28, 2011) ............................11, 12

*Durkin v. Shea & Gould*,
   92 F. 3d 1510 (9th Cir. 1996)...........................................................................2

*Fortaleza v. PNC Fin. Servs. Group, Inc.*,
   642 F. Supp. 2d 1012 (N.D. Cal. 2009) ............................................................8

*Gutierrez v. PNC Mort.*,
   2012 U.S. Dist. LEXIS 41890 (S.D. Cal. Mar. 26, 2012)................................7, 8

*Hoffman v. Bank of America, N.A.*,
   2010 U.S. Dist. LEXIS 70455 (N.D. Cal. June 30, 2010) ...............................10

*Melegrito v. CitiMortgage Inc.*,
   2011 U.S. Dist. LEXIS 60447 (N.D. Cal. June 6, 2011) .................................12

*Migra v. Warren City School Dist. Bd. of Education*,
   465 U.S. 75 (1984) ............................................................................................3

*Nguyen v. Wells Fargo Bank, N.A.*,
   749 F. Supp. 2d 1022 (N.D. Cal. 2010) ..........................................................12

*Pey v. Wachovia Mortg. Corp.*,
   2011 U.S. Dist. LEXIS 131699 (N.D. Cal. Nov. 15, 2011) ...............................4

*TBK Partners, Ltd. v. Western Union Corp.*,
   675 F. 2d 456 (2d Cir. 1982)............................................................................2

*Valerio v. Boise Cascade Corp.*,
   80 F.R.D. 626 (N.D. Cal. 1978) ........................................................................2

*Villa v. Wells Fargo Bank, N.A.*,
   2010 U.S. Dist. LEXIS 23741 (S.D. Cal. Mar. 15, 2010)................................10

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

*Western Sys., Inc. v. Ulloa,*
   958 F. 2d 864 (9th Cir. 1992)..............................................................3

**STATE CASES**

*Careau & Co. v. Security Pacific Business Credit, Inc.,*
   222 Cal. App. 3d 1371 (1990)..............................................................6

*Cel-Tech Comm'cns, Inc., v. L.A. Cellular Tel. Co.,*
   20 Cal. 4th 163 (1999) ......................................................................13

*Daro v. Superior Court,*
   151 Cal. App. 4th 1079 (2007)............................................................11

*Eddy v. Sharp,*
   199 Cal. App. 3d 858 (1988)................................................................5

*Guz v. Bechtel Nat. Inc.,*
   24 Cal. 4th 317 (2000)........................................................................9

*Ingels v. Westwood One Broadcasting Services, Inc.,*
   129 Cal. App. 4th 1050 (2005)............................................................12

*Jolley v. Chase Home Finance, LLC,*
   213 Cal. App. 4th 872 (2013)..............................................................5

*Khoury v. Maly's, Inc.,*
   14 Cal. App. 4th 612 (1993)................................................................12

*Korea Supply Co. v. Lockheed Martin Corp.,*
   29 Cal. 4th 1134 (2003) ....................................................................12

*Lueras v. BAC Home Loans Servicing,*
   LP, 221 Cal. App. 4th 49 (2013)..........................................................5

*Nymark v. Heart Federal Savings & Loan Ass'n,*
   231 Cal. App. 3d 1089 (1991)..............................................................5

*Pasadena Live, LLC v. City of Pasadena,*
   114 Cal. App. 4th 1089 (2004)............................................................9

*Peterson v. Cellco P'ship,*
   164 Cal. App. 4th 1583 (2008)............................................................11

*Racine & Laramie v. Dep't of Parks & Rec.*,
   11 Cal. App. 4th 1026 (1992)......................................................................8, 10

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*,
   17 Cal. 4th 553 (1998) ......................................................................................13

*Villacres v. ABM Indus., Inc.*,
   189 Cal. App. 4th 562 (2010)..............................................................................3

*Wolf v. Walt Disney Pictures and Television*,
   162 Cal. App. 4th 1107 (2008)............................................................................9

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200......................................................2, 3, 11, 12

Cal. Bus. & Prof. Code § 17208.........................................................................11

Cal. Civ. Proc. Code § 337.................................................................................8

Cal. Civ. Proc. Code § 338.................................................................................4

Cal. Civ. Proc. Code § 338(a)............................................................................8

Cal. Civ. Proc. Code § 340.................................................................................8

Cal. Civ. Proc. Code § 355.1.............................................................................4

Cal. Fin. Code § 4970.........................................................................................6

Cal. Fin. Code § 4970(b)(1) ..............................................................................7

Cal. Fin. Code § 4973....................................................................................6, 7, 8

Cal. Fin. Code § 4973(c)................................................................................6, 2

Cal. Fin. Code § 4977.........................................................................................8

Cal. Fin. Code § 4978.........................................................................................8

**RULES**

Fed. R. Civ. P. 9(b) ...........................................................................................13

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1.   INTRODUCTION

This action arises from a mortgage loan made to plaintiffs in 2007, by World Savings Bank, FSB, a predecessor to Wells Fargo.  Nearly seven years later, plaintiffs complain about the terms of the loan; specifically, the negative amortization feature.  As an afterthought, they make passing reference to an unfair review of a loan modification application under the federal government's Home Affordable Modification Program ("HAMP").

This lawsuit is largely time-barred.  It is also barred by the doctrine of res judicata.  Not one of the six claims for relief states is actionable, for the reasons briefed below.

## 2.   SUMMARY OF THE FIRST AMENDED COMPLAINT AND JUDICIALLY NOTICEABLE DOCUMENTS

On December 18, 2007, plaintiffs borrowed $365,000.00 from World Savings Bank, FSB ("World Savings").  FAC ¶ 7.  The loan was memorialized in a note and secured by a deed of trust recorded against 1126 Raymond Avenue, Glendale, California 91201.  Copies of the note and deed of trust are attached to the request for judicial notice ("RJN") as Exhibits 1 and 2.[1]

In their first three claims for concealment as well as intentional and negligent misrepresentation, plaintiffs allege that, over six years ago, Wells Fargo

---

[1]  World Savings Bank, FSB was a federal savings bank, evidenced by the Certificate of Corporate Existence issued by the Office of Thrift Supervision ("OTS") that is attached to the RJN as Exhibit 3.  It was renamed Wachovia Mortgage, FSB, evidenced by a November 19, 2007 letter from the OTS, a copy of which is attached to the RJN as Exhibit 4.  Effective November 1, 2009, Wachovia Mortgage FSB was converted to a national bank with the name Wells Fargo Bank Southwest, N.A. and merged into Wells Fargo Bank, N.A.  A copy of the Official Certification of the Comptroller of the Currency is attached to the RJN as Exhibit 5.  A copy of the historical profile for World Savings Bank, FSB published by the Federal Insurance Deposit Corporation, which described these events is attached to the RJN as Exhibit 6.

1   concealed the negative amortization term of the loan (FAC ¶¶ 21, 29, 38).  The

2   fourth claim for breach of contract puts a similar spin on the negative amortization.

3   It alleges that "their loan terms were in violation of <u>CA Financial Code § 4973(c)</u>"

4   (FAC ¶ 46) and that Wells Fargo breached its "<u>obligation [to] modify the loan if</u>

5   <u>the law interpreted that the interest or other charges collected exceeds the</u>

6   <u>permitted limits</u>."  (FAC ¶ 47) (emphasis original).

7        In their fifth claim for relief, plaintiffs contend that Wells Fargo breached

8   the implied covenant of good faith and fair dealing because the "negative

9   amortization rider … ensured that Plaintiff could not pay down their principal

10  balance."  (FAC ¶ 58.)  Later in that fifth claim, plaintiffs refer to the lack of a

11  "good faith review for a HAMP loan modification and [Wells Fargo] thus

12  interfered with their right to receive the benefits bargained for such under their

13  loan contracts."  (FAC ¶ 64.)

14       The sixth claim, for § 17200 violations, is a grab bag of earlier predicate

15  claims.  (FAC ¶¶ 69-70.)

### 3.   THE NEGATIVE AMORTIZATION CLAIMS HAVE ALREADY BEEN LITIGATED AND SETTLED

18       Plaintiffs are well aware of the "Pick-A-Payment" class action that applied

19  to their loan and that involved the same negative amortization claims that plaintiffs

20  allege here.  (RJN, Exh. 7; FAC ¶¶ 9-10.)  Plaintiffs were included in the class and

21  did not opt out.  (RJN, Exh. 8.)  Approval of the Class Action Settlement resulted

22  in a dismissal of claims *with prejudice*.  (RJN, Exh. 9.)

23       A court-approved class action settlement serves to bar future claims of class

24  members because, "restricting the res judicata effect of class action settlements

25  would lessen a defendant's incentive to settle."  *Durkin v. Shea & Gould*, 92 F. 3d

26  1510, 1518 (9th Cir. 1996) (*quoting*, *Valerio v. Boise Cascade Corp.*, 80 F.R.D.

27  626, 649 (N.D. Cal. 1978); *see also, TBK Partners, Ltd. v. Western Union Corp.*,

28  675 F. 2d 456, 460 (2d Cir. 1982) ("in order to achieve a comprehensive settlement

*ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP*

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   that would prevent relitigation of settled questions at the core of a class action, a

2   court may permit the release of a claim based on the identical factual predicate as

3   that underlying the claims in the settled class action even though the claim was not

4   presented and might not have been presentable in the class action").

5       The doctrine of res judicata or "claim preclusion" bars any claim that was

6   actually raised in the prior litigation as well as any claims that *could have* been

7   raised. *(Migra v. Warren City School Dist. Bd. of Education*, 465 U.S. 75, 77

8   (1984); *Cell Therapeutics, Inc. v. Lash Group*, Inc., 586 F. 3d 1204, 1212 (2010);

9   *Villacres v. ABM Indus., Inc.*, 189 Cal. App. 4th 562 (2010)).  Thus, it matters not

10  if the prior action asserted the same legal theories or causes of action.  Res judicata

11  applies as long as the prior action arose out of the same transaction or series of

12  transactions as the original action.  (*Western Sys., Inc. v. Ulloa,* 958 F. 2d 864, 871

13  (9th Cir. 1992) *cert. denied* 506 U.S. 1050 (1993)).

14      As the Court noted in the order approving the Pick-A-Payment class action,

15  plaintiffs there alleged that the Pick-A-Payment loans violated the Truth in

16  Lending Act and state law because the loan documents purportedly "failed to make

17  adequate disclosures regarding the certainty of negative amortization, the actual

18  payment schedules, the interest rates on which these schedules were based, and the

19  full terms of the parties' legal obligations."  (RJN, Exh. 9 at 2:10-14.)

20      Plaintiffs seek to relitigate these very claims in the first claim for fraudulent

21  concealment, second claim for intentional misrepresentation, and third claim for

22  negligent misrepresentation.  (FAC. ¶¶ 18-24, 28-33, 38.)  Plaintiffs' fourth claim

23  (FAC ¶¶ 51, 52) recasts these claims as a breach of contract.  Most of plaintiffs'

24  fifth claim for breach of the implied covenant of good faith and fair dealing (FAC

25  ¶¶ 58, 59) is also premised on negative amortization.  All but several paragraphs in

26  the sixth claim for § 17200 rely on the same barred claims. (FAC ¶¶ 76-78.)

27      Since these claims have already been litigated, plaintiffs cannot relitigate

28  them here. *See, Pey v. Wachovia Mortg. Corp.*, 2011 U.S. Dist. LEXIS 131699

1   (N.D. Cal. Nov. 15, 2011) (finding claims similar to plaintiffs' to be barred by the

2   doctrine of res judicata as a result of the same class action settlement).

### 4.   THE FIRST AND SECOND CLAIMS
### FOR FRAUD ARE TIME-BARRED

5   Plaintiffs' loan funded on December 18, 2007.  (FAC ¶ 7; RJN, Exhs. 1, 2.)

6   In connection with their first claim for fraudulent concealment, plaintiffs allege

7   "[w]hen originating Plaintiffs' loan, World Savings provided Plaintiffs with

8   ledgers …."  (FAC ¶ 16.)  "Repayment of Plaintiffs' loan according to the ledgers

9   would result in negative amortization…." (FAC ¶ 17.)

10  With respect to plaintiffs' second claim for intentional misrepresentation,

11  they similarly allege "World Savings, as discussed above, represented its ledgers

12  provided Plaintiffs upon origination were repayment schedules for Plaintiffs' loan.

13  These ledgers thus misrepresented Plaintiffs' interest rate, the fact of negative

14  amortization …."  (FAC ¶ 29.)

15  Plaintiffs were thus put on notice in December 2007, that their loan included

16  a negative amortization term.  California Code of Civil Procedure § 338 bars "an

17  action for relief on the ground of fraud or mistake" three years from discovery.

18  Hence, plaintiffs' first two claims for relief would be time-barred as of

19  December 18, 2010.  Nothing in the FAC suggests a later discovery date that

20  would render these claims timely.

### 5.   THE THIRD CLAIM IS TIME-BARRED
### AND THERE IS NO TORT DUTY OF CARE

23  Plaintiffs carry forward their fraud claims into the third claim for negligent

24  misrepresentation:  "Where Defendants did not know their representations as stated

25  above were false, they made them while having no reasonable grounds for

26  believing they were true."  (FAC ¶ 38.)  C.C.P. § 355.1 provides that claims for

27  negligence must be brought within two years.  Because the "negligent

28  misrepresentation" occurred at the loan origination in 2007, it was time-barred on

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

December 18, 2009.  Even if the three-year fraud statute applies, the claim was time-barred in December 2010.

This time-barred claim also fails because there is no tort duty of care.  "As is true of negligence, responsibility for negligent misrepresentation rests upon the existence of a legal duty...."  (*Eddy v. Sharp*, 199 Cal. App. 3d 858, 864 (1988)).  "The determination of whether a duty exists is primarily a question of law."  *Id*.  In *Nymark v. Heart Federal Savings & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095 (1991), the Court held:  "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."[2]  *See also, Lueras v. BAC Home Loans Servicing*, LP, 221 Cal. App. 4th 49, 67-68 (2013) ("We conclude a loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money....  The Biakanja factors do not support imposition of a common law duty to offer or approve a loan modification … [or] a duty of care to handle [a borrower's] loan in such a way to prevent foreclosure and forfeiture of his property").  Here, Wells Fargo's alleged misconduct is in the origination of the loan, which is conduct that is well within the bounds of its conventional role as a mere lender.  Thus, plaintiffs cannot establish a duty of care required to state a claim for negligent misrepresentation.

## 6.   PLAINTIFFS' TIME-BARRED FOURTH CLAIM FOR RELIEF FOR BREACH OF CONTRACT FAILS

Plaintiffs must plead (1) the contract, (2)  plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff.  (*Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App.

---

[2]  *See*, *Jolley v. Chase Home Finance, LLC*, 213 Cal. App. 4th 872 (2013) for contrary view, in the context of a construction loan.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  3d 1371, 1388 (1990)).

2  Plaintiffs' contract claim arises from a clause in the deed of trust entitled

3  "maximum loan charges" that provides:  "If the loan secured by this Security

4  instrument is subject to a law which sets maximum loan charges, and that law is

5  finally interpreted so that the interest or other charges collected or to be collected

6  in connection with the loan exceed permitted limits, then (A) any such loan charge

7  shall be reduced by the amount necessary to reduce the charge to the permitted

8  limit, and (B) any sums already collected from Borrower which exceeded

9  permitted limits will be refunded to Borrower…."  (RJN, Exh. 2.)

10  Plaintiffs allege that California Fin. Code § 4973(c) is such a law.  (FAC

11  ¶¶ 46-48.)  Section 4973 provides:  "The following are prohibited acts and

12  limitations for covered loans … (c) a covered loan shall not contain a provision for

13  negative amortization such that the payment schedule for regular monthly

14  payments causes the principal balance to increase, unless the covered loan is a first

15  mortgage and the person who originates the loan discloses to the consumer that the

16  loan contains a negative amortization provision that may add principal to the

17  balance of the loan."

18  Plaintiffs' argument suffers from a number of defects.

19  First, plaintiffs fail to allege the loan is a "covered loan" subject to Cal. Fin.

20  Code § 4973.  Cal. Fin. Code § 4970 defines a "covered loan" as:

21  [A] consumer loan in which the original principal balance of the

22  loan does not exceed the most current conforming loan limit for

23  a single-family first mortgage loan established by the Federal

24  National Mortgage Association in the case of a mortgage or

25  deed of trust, and where one of the following conditions are

26  met:  (1) For a mortgage or deed of trust, the annual percentage

27  rate at consummation of the transaction will exceed by more

28  than eight percentage points the yield on Treasury securities

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   having comparable periods of maturity on the 15th day of the

2   month immediately preceding the month in which the

3   application for the extension of credit is received by the

4   creditor.

5   Cal. Fin. Code § 4970(b)(1).  Plaintiffs do not even suggest, let alone expressly

6   allege, any facts that the loan secured by the deed of trust is a "covered loan."

7       Even if the loan were a "covered loan," § 4973(c) provides an exception for

8   a first mortgage where the lender "discloses to the consumer that the loan contains

9   a negative amortization provision that may add principal to the balance of the

10  loan."  Pertinent here is the note, which provides that, "[f]rom time to time, my

11  monthly payments may be insufficient to pay the total amount of monthly interest

12  that is due.  If this occurs, the amount of interest that is not paid each month, called

13  'Deferred Interest,' will be added to my Principal and will accrue interest at the

14  same rate as the Principal."  (RJN, Exh. 1, ¶ 2E).  Thus, given this disclosure,

15  § 4973 does not apply here.

16      Moreover, plaintiffs allege no facts that § 4973 is a "law which sets

17  maximum loan charges."  Nor do plaintiffs allege that § 4973 was "finally

18  interpreted so that the interest or other loan charges collected or to be collected in

19  connection with the loan exceeded permitted limits."

20      The claim is also time-barred under the one-year and four-year statutes.  The

21  court, in *Gutierrez v. PNC Mort.,* 2012 U.S. Dist. LEXIS 41890 *8 (S.D. Cal.

22  Mar. 26, 2012) held in a case involving Financial Code § 4973:

23      *Section 340* of the California Code of Civil Procedure provides a one-

24      year limitation period for penalty statutes unless the applicable statute

25      provides a different limitation period (*Cal. Code Civ. Proc. §340*

26      (2003); *See, Id. § 338(a)*(providing that three-year statute of

27      limitations applies to statutes not involving penalties)).  Because

28      *section 4977* permits a statutory penalty and *section 4978* permits a

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

civil remedy for violations under *section 4973* but does not provide a separate statute of limitations, the one-year period under *section* 340 applies.

As noted earlier, plaintiffs' claim arose out of the loan origination and accrued at the loan's consummation in December 2007.  (RJN, Exhs. 1, 2.) Plaintiffs' claim thus expired in December 2008.

Even if the four-year statute of limitations for breach of written contract applies, plaintiffs' claim expired in December 2011, four years after the loan origination in 2007.  (C.C.P. §337, providing four-year statute of limitations based on a written contract.)

## 7.   PLAINTIFFS' FIFTH CLAIM FOR BREACH OF GOOD FAITH AND FAIR DEALING FAILS

Plaintiffs allege that Wells Fargo breached the implied covenant of good faith and fair dealing by the negative amortization feature of the loan.  (FAC ¶¶ 58, 59.)  Plaintiffs also allege that language in the deed of trust promises that refinancing would be available to them "down the road."  (FAC ¶ 61.)  Finally, plaintiffs allege that they applied for a HAMP loan modification, which Wells Fargo "unfairly neglected."  (FAC ¶¶ 62-64.)

"To establish a breach of an implied covenant of good faith and fair dealing, a plaintiff must establish the existence of a contractual obligation, along with conduct that frustrates the other party's rights to benefit from the contract."  (*Fortaleza v. PNC Fin. Servs. Group, Inc.,* 642 F. Supp. 2d 1012, 1021-22 (N.D. Cal. 2009) (*citing Racine & Laramie v. Dep't of Parks & Rec.,* 11 Cal. App. 4th 1026, 1031 (1992)).  The "implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract." (*Pasadena Live, LLC v. City of Pasadena,* 114 Cal. App. 4th 1089, 1093-94 (2004).  *See also, Guz v. Bechtel Nat. Inc.,* 24 Cal 4th 317, 349-50

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   (2000) "[T]he implied covenant will only be recognized to further the contract's

2   purpose; it will not be read into a contract to prohibit a party from doing that which

3   is expressly permitted by the agreement itself." *Wolf v. Walt Disney Pictures*

4   *and Television,* 162 Cal. App.4th 1107, 1120 (2008)).

5       The first breach purportedly arose from a clause in the deed of trust stating

6   that "Plaintiffs would pay 'all of the principal and interest due under the Secured

7   Note.' ….   The negative rider, however, ensured that Plaintiff could not pay down

8   their principal balance.  …Wells Fargo – thus violated the deed of trust in never

9   applying Plaintiffs' repayments to their principal."  (FAC ¶ 58.)  Yet, the

10   obligation to repay the note expressly belongs to plaintiffs – the borrowers.  And

11   assuming the "negative amortization rider" is part of the contract, Wells Fargo

12   applied the payment pursuant to the contract.  (FAC ¶ 58.)

13       Plaintiffs also allege that the "use of negative amortization also breached

14   what the loan contract indicated … that if Plaintiffs made the prescribed monthly

15   repayments presented, then they would repay their loan successfully and without

16   penalty, which was also to include any type of increased payment.  Negative

17   amortization, however, absolutely disallowed this."  (FAC ¶ 59.)  This allegation,

18   too, is based on plaintiffs' express covenant under the contract "to pay to Lender,

19   on time, all principal and interest due under the Secured Notes …." (RJN, Exh. 2,

20   pg. 3.)

21       The second purported breach is based on the following language in the

22   deed of trust, which states, "[t]he secured note may be renewed or negotiated."

23   (FAC ¶ 61.)  Plaintiffs thus believe that Wells Fargo "promised Plaintiffs

24   refinancing was available to them down the road" (FAC ¶ 61) but this was

25   somehow impaired (FAC ¶ 66.)  The unedited statement in the deed of trust is:

26   "[t]his is a first deed of trust which secures a note which contains provisions

27   allowing for changes in my payment amount and principal balance (including

28   future advances and deferred interest).  <u>At lender's option</u> the secured note may

1  be renewed or negotiated." (RJN, Exh. 2, emphasis added.) Plaintiffs provide no

2  facts that would support an interpretation of this language as a promise to

3  refinance. (FAC ¶ 61.)

4      The last purported breach is based on plaintiffs' alleged application for a

5  HAMP loan modification. (FAC ¶ 62.) Plaintiffs allege that "[d]efendants

6  unfairly neglected Plaintiffs good faith review for a HAMP loan modification and

7  thus interfered with their right to receive the benefits bargained for under their

8  loan contract." (FAC ¶ 64.) What plaintiffs bargained for and agreed to is the

9  following language in the deed of trust: "[t]his Security Instrument may be

10  modified or amended only by an agreement in writing signed by Borrower and

11  Lender." (RJN Ex. 2, ¶23.) From this clause, apparently, plaintiffs pull an

12  implied covenant forcing Wells Fargo to modify their loan. That is hardly an

13  implied covenant that "rests upon the existence of some specific contractual

14  obligation." (*Racine, supra,* 1031.)

15      What's more, plaintiffs have no private right of action under HAMP.

16  (*Hoffman v. Bank of America, N.A.*, 2010 U.S. Dist. LEXIS 70455, at *15 (N.D.

17  Cal., June 30, 2010) ("lenders are not required to make loan modifications for

18  borrowers that qualify under HAMP nor does the servicer's agreement confer an

19  enforceable right on the borrower"); *Villa v. Wells Fargo Bank, N.A.*, 2010 U.S.

20  Dist. LEXIS 23741, at *6-*7 (S.D. Cal., Mar. 15, 2010) ("[T]he HAMP agreement

21  did not require loan servicers to modify eligible loans; thus, the court found

22  borrowers lacked standing to enforce the agreement")).

23      **8.   PLAINTIFFS' UCL CLAIM IS FATALLY DEFECTIVE**

24  **A.   The UCL Claim is Time-Barred**

25      Business and Professions § 17208 provides a four-year statute of limitations

26  for this claim. All of the incorporated loan origination claims are time-barred, as

27  briefed above. Plaintiffs' UCL claim is likewise time-barred, based on § 17208.

28  Plaintiffs' claim accrued in December 2007 and expired in December 2011. (FAC

*ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP*

1   Exh; 7; RJN, Exh 1, 2.)  The HAMP review claims may be time-barred depending

2   on when the HAMP review occurred.

3   **B.    Plaintiffs Lack Standing to Assert A UCL Claim**

4        To sue under California's Unfair Competition Law ("UCL"), "[a] private

5   plaintiff must make a two-fold showing:  he or she must demonstrate injury in fact

6   and a loss of money or property caused by unfair competition." *Peterson v. Cellco*

7   *P'ship*, 164 Cal. App. 4th 1583, 1590 (2008); *see also, Daro v. Superior Court*,

8   151 Cal. App. 4th 1079, 1098 (2007) ("Thus, a private person has no standing

9   under the UCL unless that person can establish that the injury suffered and the loss

10  of property or money resulted from conduct that fits within one of the categories of

11  'unfair competition' in section 17200.").

12       Plaintiffs conclude without alleging any facts that as Wells Fargo's

13  "practices stand to rob Plaintiffs of their home in foreclosure; to date, they have

14  sunk the equity of Plaintiffs' home and put them under water financially via

15  excessive monthly repayments that kicked in when their loan recast, etc."  (FAC

16  ¶ 76.)

17       First, the possibility of a foreclosure, and loss of equity, if any, would be the

18  result of plaintiffs' failure to pay their mortgage, not because of Wells Fargo's

19  conduct.  In a similar situation, the Court in *DeLeon v. Wells Fargo Bank, N.A.*,

20  2011 U.S. Dist. LEXIS 8296 (N.D. Cal. 2011), held that the borrowers did not state

21  a claim for violation of UCL:

22            The Court cannot reasonably infer that Wells Fargo's alleged

23            misrepresentations resulted in the loss of Plaintiffs' home.

24            Rather, the facts alleged suggest that Plaintiffs lost their home

25            because they became unable to keep up with monthly payments

26            and lacked the financial resources to cure the default.  Although

27            the Court understands Plaintiffs' frustrations with Wells

28            Fargo's seemingly contradictory statements and actions, it does

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   not appear that this conduct resulted in a loss of money or

2   property.

3   *Id*. at *19-22.  Because plaintiffs do not aver any injury in fact, their UCL claim

4   must be dismissed.

5   **C.    Plaintiffs Have Not Alleged Any UCL Violation**

6   Even if plaintiffs had alleged standing, they have not plead any violation of

7   the UCL.  It is well established that a claim under the UCL must state with

8   reasonable particularity the facts supporting the elements of the alleged violation

9   (*Khoury v. Maly's, Inc.*, 14 Cal. App. 4th 612, 619 (1993)), and an allegation of

10  particular facts showing ongoing, unlawful, unfair, and fraudulent business acts on

11  the part of the defendant is required.  (*Korea Supply Co. v. Lockheed Martin Corp.*,

12  29 Cal. 4th 1134, 1143 (2003); *Khoury*, 14 Cal. App. 4th at 619; *Nguyen v. Wells*

13  *Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1037 (N.D. Cal. 2010) ("this cause of

14  action is derivative of some other illegal conduct or fraud committed by a

15  defendant, and a plaintiff must state with reasonable particularity the facts

16  supporting the statutory elements of the violation")).

17  First, the "unlawful" prong requires a viable predicate claim because it

18  borrows statutory or constitutional claims from elsewhere.  (*Melegrito v.*

19  *CitiMortgage Inc.*, 2011 U.S. Dist. LEXIS 60447, *24 (N.D. Cal. June 6, 2011)).

20  "A defendant cannot be liable under § 17200 for committing 'unlawful business

21  practices' without having violated another law."  (*Ingels v. Westwood One*

22  *Broadcasting Services, Inc.*, 129 Cal. App. 4th 1050, 1060 (2005) (citations

23  omitted)).  As briefed above, none of plaintiffs' claims is actionable.

24  Second, the "unfair" prong applies when the practice at issue allegedly

25  violates "the policy or spirit of [anti-trust] laws because its effects are comparable

26  to a violation of the law, or that otherwise significantly threatens or harms

27  competition."  (*Cel-Tech Comm'cns, Inc., v. L.A. Cellular Tel. Co.*, 20 Cal. 4th

28  163, 187 (1999)).

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   The California Supreme Court further explained that the "unfair" prong

2   applies to business practices that offend an established "public policy or when the

3   practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious

4   to customers." *Id*. at 187.  Plaintiffs' allegations that "Defendants unfairly placed

5   Plaintiffs in a predatory loan" (FAC ¶ 74) and "unfairly denied Plaintiffs a HAMP

6   modification" (FAC ¶ 75) are not only factually devoid, they are not "unfair" as

7   defined by *Cel-Tech*.

8   The "fraudulent" prong is premised on plaintiffs' conclusion that

9   "Defendants committed fraud in concealing material information."  (FAC ¶ 82.)

10   However, plaintiffs fail to allege any facts as to the material information

11   concealed, let alone to the level of specificity required by Rule 9(b).  Plaintiffs'

12   reference to their fraud-based claims is meritless because those claims are time-

13   barred, barred by res judicata, and otherwise not properly pled.

14   Indeed, a UCL claim "cannot be used to state a cause of action the gist of

15   which is absolutely barred under some other principle of law." *Stop Youth*

16   *Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553, 566 (1998); *Cel-Tech*

17   *Communications, Inc.,* 20 Cal. 4th at 182 ("A court may not allow a plaintiff to

18   'plead around an absolute bar to relief simply by recasting the cause of action as

19   one for unfair competition.'").

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

## 9.   <u>CONCLUSION</u>

For the foregoing reasons, Wells Fargo requests an order granting this motion without leave to amend and dismissing this action with prejudice.

Respectfully submitted,

Dated:  February 21, 2014

ANGLIN, FLEWELLING, RASMUSSEN, CAMPBELL & TRYTTEN LLP

By:  ____/s/ Jane K. Lee_____
     Jane K. Lee
     Attorneys for Defendant
     WELLS FARGO BANK, N.A., successor
     by merger with Wells Fargo Bank
     Southwest, N.A., f/k/a Wachovia Mortgage,
     FSB, f/k/a World Savings Bank, FSB
     ("Wells Fargo")

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

## CERTIFICATE OF SERVICE

I, the undersigned, declare that I am over the age of 18 and am not a party to this action.  I am employed in the City of Pasadena, California; my business address is Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, 199 S. Los Robles Avenue, Suite 600, Pasadena, California  91101-2459.

On the date below, I served a copy of the foregoing document entitled:

**DEFENDANT WELLS FARGO'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

on the interested parties in said case as follows:

**Served Electronically Via the Court's CM/ECF System**

*Attorneys for Plaintiffs:*

John E. Mortimer, Esq.
Law Office of John E. Mortimer
43980 Mahlon Vail Circle, Suite 806
Temecula, CA  92592
Tel:  (949) 202-1297
Fax: (949) 502-0819

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.  This declaration is executed in Pasadena, California on February 21, 2014.

| | |
|---|---|
| Marianne Mantoen | */s/ Marianne Mantoen* |
| (Type or Print Name) | (Signature of Declarant) |